UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED FOOD AND COMMERCIAL WORKERS UNION 8-GOLDEN STATE,**<br><br>**Plaintiff**<br><br>v.<br><br>**GIBSON WINE COMPANY,**<br>**A California Non-Profit**<br>**Cooperative Corporation**<br><br>**Defendant** | **CASE NO. 1:17-CV-1674 AWI-BAM**<br><br>**ORDER ON PARTIES'**<br>**CROSS-MOTIONS**<br>**FOR SUMMARY JUDGMENT**<br><br>(Doc. No's. 24, 28) |

This case arises from a dispute over Defendant Gibson Wine Company's decision to outsource the jobs of four of its now-former maintenance workers, each of whom is represented by Plaintiff United Food and Commercial Workers 8-Golden State (the "Union").

The Union filed a motion to compel arbitration, as mandated by the parties' collective bargaining agreement. It now moves for summary judgment, contending Gibson Wine has acted in bad faith in refusing to participate in arbitration concerning the layoffs. Gibson Wine has also moved for summary judgment, contending the involvement of the National Labor Relations Bureau (the "NLRB") has either stripped the Court of its jurisdiction to compel arbitration, moots the issues to be arbitrated, or demonstrates the Union waived its right to arbitrate. Gibson Wine also contends compelling arbitration would be inconsistent with the Court's previous consent decree in a related case (between Gibson Wine and the EPA/DOJ).

For the reasons that follow, the Court will deny Gibson Wine's motion, grant the Union's request to order the parties to arbitration, and deny the Union's request for attorney's fees.

*Background*[1]

The Union represents a number of Gibson Wine's employees, and their relationship is governed by a collective bargaining agreement ("CBA"). See Doc. No. 30-2 at ¶¶ 1-7 (Pl. Stmt. of Facts). Section XXIII of the CBA details a mandatory grievance and arbitration process for disputes concerning "the interpretation or application of [the CBA]." Id. at ¶ 7.

In 2012, an employee in Gibson Wine's maintenance department opened the wrong valve on the refrigeration system, releasing a toxic amount of ammonia into the plant; one employee died. Doc. 31-1 at ¶ 3 (Def. Stmt. of Facts). The EPA and DOJ filed suit against Gibson Wine, alleging violations of the Clean Air Act and CERCLA. Id. at ¶¶ 4-5. Gibson Wine believed that because of this suit, it "was forced to choose between replacing the current employees in the maintenance department with professionals who have the requisite qualifications to safely work with ammonia, or contracting with an outside company to provide those services." Doc. No. 28-4 at ¶ 7 (Decl. Albrecht).

In a July 10, 2017 letter, Gibson Wine informed the four maintenance workers of their termination, stating the board of directors decided to "go a different direction and . . . out-source its maintenance." Doc. No. 27 at p. 43 (Pl. Ex. B). The Union filed two grievances, claiming that by laying off "all company mechanics," Gibson Wine violated two provisions of the CBA: Section X, par. 34, concerning outside contracting ("Grievance 8026"), and the "Seniority Supplement," concerning the bumping rights of the laid-off employees ("Grievance 5939D"). Id. at p. 45 (Pl. Ex. C); p. 49 (Pl. Ex. D).

On July 27, the Union informed Gibson Wine that if the company would not participate in the grievance process within 10 days, the Union would proceed to arbitration. Doc. No. 27 at p. 55 (Pl. Ex. E). Concurrent with this position, the Union submitted the Grievances to the Federal Mediation and Conciliation Service to begin the arbitration process. Doc. No. 30-3 (Def. Ex. H).

---

[1] "On cross-motions for summary judgment, a court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the non-moving party." Boydstun Metal Works, Inc. v. Cottrell, Inc., 519 F. Supp. 2d 1119, 1126 (D. Or. 2007) (citing Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir.2001). Thus, the Court has endeavored to present the facts in a light most favorable to the Union on the issues raised by Gibson Wine, and vice versa for the issues raised by the Union.

On July 28, Gibson Wine sent letters directly to the four laid-off employees, offering "severance pay" and an "additional voluntary departure package to assist you in your transition." Id. at p. 58-64 (the "Direct-Dealing Letters"). The letters also offered an "additional two weeks of pay" in exchange for the workers' signatures on a "Departure Agreement and Release of All Claims." Id.

In response to the Direct-Dealing Letters, the Union filed a charge with the NLRB against Gibson Wine. Doc. No. 28-4 at p. 99 (Def. Ex. I, the "NLRB Charge"). It alleged:

> Within the preceding six months, the Employer violated the [National Labor Relations Act, Sections 8(a)(1) and (5)] by dealing directly with employees represented by [the Union] on mandatory bargaining subjects including the terms of their separation from employment. Said direct dealing was made to the exclusion of [the Union].

Id. On September 11, the FMCS responded to the Union's second attempt to assemble an arbitration panel and arbitrate the Grievances. Doc. No. 28-4 at p. 82.

On September 13, 2017, the NLRB informed Gibson Wine it was opening an investigation, stating it was necessary for the Agency to collect evidence "raised in the investigation of the above-captioned matter [Case 32-CA-204895]." Doc. No. 28-4 at p. 101. (Def. Ex. J). The letter defined the scope of the allegations as follows:

> The Union alleges that [Gibson Wine] unilaterally subcontracted (outside contracting) the maintenance department, which affected four employees then-currently working in that department. [Gibson Wine] engaged in direct dealing by announcing this change to the four employees by letter dated July 10, 2017. Thereafter, by letter dated July 28, [Gibson Wine] engaged in direct dealing by offering severance payment, in addition to two weeks' pay with a release of claims. [Gibson Wine] did not did not bargain with the Union in regard to either of these two communications with the four employees. The Union filed a grievance regarding the subcontracting on July 12, 2017. The Union requested arbitration on or about July 25, 2017.

Id.

On October 20, 2017, the Union wrote to the NLRB to clarify its position on the nature of the charge it had brought to the Agency. Doc. No 32-1 at p. 5 (Pl. Ex. H). The Union stated, "to avoid any confusion, it is wise to review the factual background of this dispute." Id. The Union then characterized the conduct underlying Grievances 8026 and 5939D as background, and the

3

NLRB Charge was based on Gibson Wine's conduct "<u>subsequent</u> to the announcement of the subcontracting and <u>subsequent</u> to the events leading to the grievances." <u>Id.</u> (emphasis in original). The Union then specifically referenced the direct-dealing events, cited its August 31st brief (substantially concerning the direct-dealing issue), and concluded "a complain on the direct dealing allegations should issue." <u>Id.</u> at p. 6. In November, the NLRB emailed the Union, stating "[a]t this time, the Union is not pursuing a [charge] regarding the seniority provision, the subcontracting provision, or the severance provision." <u>Id.</u> at p. 32 (Pl.'s Ex. I, the "NLRB October Email").

On December 13, 2017, the NLRB sent the Union a copy of the "Settlement Agreement" negotiated between the Agency and Gibson Wine. Doc. No. 28-4 at pp. 104-107 (Def. Ex. K). The Settlement Agreement notified the Union that Gibson Wine had agreed to settle "only the allegations in the above-captioned case(s) [Case 32-CA-204895], including all allegations covered by the attached Notice to Employees made part of this agreement, and does not settle other case(s) or matters." <u>Id.</u> at p. 104. The Notice to Employees (to be posted at Gibson Wine's business location) was to inform Gibson Wine's union-member employees that the Company would not directly deal with them or bypass the Union, nor would the Company otherwise prevent them from engaging in union-related activity. <u>Id.</u> The Notice also stated Gibson Wine would, "on request, bargain in good-faith with the Union regarding the severance, waiver and release of the laid off maintenance employees and, if an understanding is reached, embody the understanding in a signed agreement." <u>Id.</u> at p. 106. The NLRB informed the Union of its right to approve or reject the Settlement Agreement, and noted the Union could acquiesce to its terms through inaction. Doc. No. 28-4 at p. 109 (Def. Ex. L). The Union did not object to the settlement. Doc. No. 29-2 at ¶ 7 (Supp. Decl. Holsberry) Instead, the Union filed the instant complaint to compel arbitration on Grievances 8026 and 5939D. <u>See</u> Doc. No. 1.

On January 19, 2018, the NLRB Compliance Department sent Gibson Wine a letter describing "what the Employer needs to do to comply with the [Settlement] Agreement." Doc. No. 26 at pp. 60-63 (Pl. Ex. F, the "Compliance Letter"). Gibson Wine was to post the "Notice to Employees," as incorporated in the Settlement Agreement, and certify compliance with this

4

requirement. Id. The Compliance Letter also stated:

> **Remedial Actions**:
>
> *Bargaining*: The Settlement Agreement provides that on request, [Gibson Wine] will bargain in good faith with the Union regarding the severance, waiver and release of the laid off maintenance employees and, if an understanding is reached, embody the understanding in a signed agreement.
> Please advise [the NLRB] of the date, time and place when negotiations will begin. The Employer should submit to this office, along with the Certification of Compliance Part Two, copies of the communications with the Charging Party Union setting up initial and follow-up negotiations in this matter. Thereafter, until this case is closed, please keep all relevant correspondence, proposals, notes, and other documents and periodically send [the NLRB] written updates on the progress of negotiations.

Id. at p. 60-61. "Certification of Compliance Part Two" is a form allowing the parties to inform the NLRB of the date the Union requested bargaining, the date the parties agreed to meet, and the date the meeting took place. Id. at p. 62. The form also states "[i]f an agreement on the severance, waiver, and release terms for the laid off maintenance employees is [sic] reached, [Gibson Wine] will provide a copy of the signed agreement to the [NLRB]." Id.

On April 30, 2018, the parties filed cross motions for summary judgment.

*Legal Standard for Summary Judgment*

Summary judgment is proper when no genuine issue as to any material fact exists, entitling the moving party to judgment as a matter of law. Rule 56.[2] A dispute is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the suit under the governing law. United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).

The party seeking summary judgment bears the initial burden of informing the court of the legal basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party will bear the burden of proof on an issue at trial, the movant

---
[2] Citations to the "Rules" is to the Federal Rules of Civil Procedure, unless otherwise noted.

5

must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Id. Where the moving party will not bear the burden of proof on an issue at trial, the movant may prevail by "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970)).

If the moving party meets its initial burden, the opposing party must then establish that a genuine issue as to any material fact exists. Id. at 1103. The opposing party cannot rest upon the mere allegations or denials of its pleading, but must instead produce evidence that sets forth specific facts showing a genuine issue for trial still exists. Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Anderson, 477 U.S. at 248). The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in the opposing-party's favor. Anderson, 477 U.S. at 255; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, it must still be rational or reasonable. Id. The parties have the obligation to identify material facts; the court is not required to scour the record in search of a genuine disputed material fact. Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010). A party's "conclusory statement that there is a genuine issue of material fact, without evidentiary support, is insufficient to withstand summary judgment." Bryant v. Adventist Health Sys./W., 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249-50; Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

Fundamentally, summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015).

/ / /

/ / /

*Parties' Arguments*

Gibson Wine requests summary judgment on a number of arguments, many of them rooted in the fact that the (I) NLRB allegedly investigated and settled the Grievances. Gibson Wine also contends (II) ordering arbitration would be inconsistent with the Court's previous consent decree in the DOJ/EPA action. Gibson Wine therefore maintains summary judgment should issue in its favor on the Union's motion to compel arbitration.

Conversely, the Union has requested the Court find no issue of material fact on its petition to compel arbitration and order Gibson Wine to participate in the arbitration process. See Doc. No. 1. The Union contends (III) the CBA governs the disputes raised in the Grievances, and each of Gibson Wine's contentions are either contrary to law or not borne out by the facts. The Union also contends (IV) attorney's fees are warranted because Gibson Wine is acting in bad faith by refusing to arbitrate.

*Analysis*

**I.      The NLRB Settlement Agreement's Relation to the Grievances**

The core of Gibson Wine's contentions concern the nature of the Grievances and whether those issues were submitted to and resolved by the NLRB. Gibson Wine contends (A) the Court lacks jurisdiction to compel arbitration because the subject of Grievances 8026 and 5939D raise "representational issues," within the NLRB's exclusive jurisdiction; (B) the issues raised in the Grievances have been resolved, as per the Settlement Agreement, and so these issues are moot; or alternatively (C) the Union waived its right to arbitrate by electing to pursue these claims through the NLRB. The Union disagrees with these contentions, arguing (A) the Grievances are contractual in nature, and do not concern the Union's authority to represent the workers; (B) the Settlement Agreement only resolved the direct dealing issue; and (C) the Union has consistently sought to arbitrate the Grievances, both before and after involvement of the NLRB.

   A. *Grievances regarding the layoffs are not "representational" issues*

Section 301 of the Labor Management Relations Act states that "suits for violations of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States . . . ." 29 U.S.C. § 185. Conversely, issues

concerning "representation" fall within the NLRB's primary jurisdiction, and courts are counseled to defer to the NLRB and refuse jurisdiction in these cases. United Ass'n of Journeymen v. Valley Engineers, 975 F.2d 611, 613 (9th Cir. 1992). This deference is rooted in part in "the superior expertise of the Board" over matters of representation. Id. Thus, a court must define the scope of the dispute when considering whether it may exercise jurisdiction or defer to the NLRB. See Id. at 614 ("[C]ongress did not intend by enacting Section 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units."). Representational issues are best conceived as those governing the designation of an "exclusive bargaining agent" or identification of "an appropriate collective bargaining agreement." See Union Local 2 v. Marriott Corp., 961 F.2d 1464, 1468 (9th Cir. 1992). Conversely, contractual issues are those that require resolution of disputes that focus on "the interpretation of the terms of the collective bargaining agreement." Valley Engineers, 975 F.2d at 614.

In Valley Engineers, the Ninth Circuit determined the union's suit turned on the question of whether a company had illegally double-breasted (where one entity owns two companies performing similar services, only one of which entered a collective bargaining agreement). Id. at 612. Because the heart of this issue was whether the union could even represent the workers in their dispute with the "non-union" company (who didn't sign a collective bargaining agreement), the Ninth Circuit held that the district court should have deferred to the NLRB's expertise in this "representational" dispute. Id. at 614. By comparison, the Ninth Circuit in Pace v. Honolulu Disposal Serv., Inc. determined the union's complaint to be "primarily contractual" becaue it concerned workers' entitlement to wages and benefits under a collective bargaining agreement. 227 F.3d 1150, 1156 (9th Cir. 2000). The Circuit Court reminded courts that they "'must tread lightly' in areas of the NLRB's primary jurisdiction and 'must continue to defer when, on close examination, section 301 cases fall within the NLRB's primary jurisdiction.'" Id. at 1156-57 (quoting Valley Engineers, 975 F.2d at 614). However, "stripped to essentials," the union's dispute in Pace was "a classic contractual dispute," only given "representational overtones" by defendant's inconsistent assertions challenging the validity of the collective bargaining agreement. Id. at 1157.

Similar to Pace, the Grievances present a "classic contractual dispute," as they concern the interpretation of the maintenance-workers' rights under the CBA. Id. Grievance 8026 alleged Gibson Wine violated Section X, par. 34 of the CBA by laying off "all company mechanics permanent[ly]." Doc. No. 27 at p. 45. Grievance 5939D alleged a violation of the Seniority Supplement to the CBA when Gibson Wine "[kept] working the less senior employees." Id. at p. 49. Gibson Wine contends it had no choice but to lay off the maintenance workers and "out-source its maintenance." Doc. No. 28-4 at ¶ 7. This dispute has nothing to do with the Union's right to represent these employees or bargain on their behalf with Gibson Wine in this dispute. Pace, 227 F.3d 1150, 1156. Thus, Gibson Wine's "representational" argument fails, leaving § 301 of the LMRA as the correct source of the Court's jurisdiction.

B. *The Settlement Agreement did not resolve the issues raised in the Grievances*

Gibson Wine next argues the terms of the Settlement Agreement have mooted the Union's motion to compel arbitration because the dispute submitted to and resolved by the NLRB concerned the laid-off maintenance workers. Upon closer inspection, however, it is clear the Settlement Agreement has only resolved the direct-dealing issue, which arose almost two months after the workers were laid off, and which was treated by the Union and the NLRB as an issue separate and distinct from the dispute alleged in the Grievances. Examining the plain language of the settlement agreement is the key to remedying Gibson Wine's apparent confusion. See Jones v. McDaniel, 717 F.3d 1062, 1067 (9th Cir. 2013) ("As a general matter, the construction and enforcement of settlement agreements are governed by principles of local law[,] even where a federal cause of action is settled or released."); Cal. Civ. Code § 1638 (a contract's plain language governs its interpretation); Salimi v. BMW Fin. Servs. NA, LLC, 2017 WL 4570367, at *7 (N.D. Cal. Sept. 29, 2017) ("[A] contract must be discerned within its four corners, extrinsic evidence being relevant only to resolve ambiguity in the decree.").

The Settlement Agreement, as negotiated between the NLRB and Gibson Wine, and as acquiesced to by the Union, defines the scope of settled claims in two key ways. See Doc. No. 28-4 at pp. 104-107. First, it limits the settled claims to "only the allegations in the above-captioned case[,]"—Case 32-CA-204895. Id. at p. 104. The Charge in Case 32-CA, filed in August 2017,

stated in full:

> Within the preceding six months, the Employer violated the [National Labor Relations Act, Sections 8(a)(1) and (5)] by dealing directly with employees represented by [the Union] on mandatory bargaining subjects including the terms of their separation from employment. Said direct dealing was made to the exclusion of [the Union].

Doc. No. 28-4 at p. 99. A basic grammatical deconstruction of the subject-verb-object demonstrates this charging statement only concerns the direct-dealing issue, as the Union maintains was the case. Who is the subject? "The Employer." What did the Employer do? "Violated the Act." How so? "[B]y directly dealing with employees . . . ." The phrases following these words provide context, but are not the operative portions of the sentence and therefore cannot be read to have alleged additional wrongdoing. The second sentence of the charge—"[s]aid direct dealing [excluded the Union]"—also does not mention the Grievance disputes, and supports the Court's plain-language reading. Cal. Civ. Code § 1638.

However, the Settlement Agreement also states that it governs "all allegations covered by the attached Notice to Employees made part of this agreement . . . ." Id. at p. 104. Most of the Notice's provisions speak to the direct-dealing issue. Id. However, it also informs Gibson Wine's employees that the Company will "on request, bargain in good-faith with the Union regarding the severance, waiver and release of the laid off maintenance employees and, if an understanding is reached, embody the understanding in a signed agreement." Id. at p. 106. Gibson Wine contends this paragraph, as well as other extrinsic evidence, clearly indicates the NLRB intended to "broaden its investigation to any matter 'related to the allegations or subject matter set forth as the basis for the underlying charge.'" See Doc. 31 at p. 14 (Def. Reply) (quoting Nickles Bakery of Ind., Inc., 296 NLRB 927, 929 (1989); Drug Plastics & Glass Co. v. NLRB, 44 F3d 1017, 1020 (D.C. Cir. 1995)). Even if this were the NLRB's intent (and the Court is not convinced the NLRB *could* have broadened its investigation from the direct-dealing issue into the Grievance disputes[3]),

---
[3] The federal courts and the Board have concurrent jurisdiction over Section 301 cases. See Brotherhood of Teamsters v. California Consolidators, Inc., 693 F.2d 81, 83 (9th Cir. 1982). However, in order for the NLRB to expand its investigation into an area not alleged in the charge, the issues need to be "closely related." See NLRB v. Hotel Conquistador, Inc., 398 F.2d 430 (9th Cir.1968) (discussing the principle that additional allegations in an NLRB case must be "closely related" to those contained in the original charge for the NLRB to be able to resolve the new

the plain language of this portion of the Notice demonstrates otherwise. Simply, nowhere in the Settlement Agreement is there a provision granting or denying relief the workers are seeking by filing their Grievances—relief such as reinstatement, back pay and the like. Gibson Wine is correct to note that this final paragraph of the Notice does not specifically refer to the direct-dealing allegations, and discusses the "severance, waiver and release of the laid off workers." Doc. No. 28-4 at p. 106. However, the operative portion of the "WE WILL" promise is an agreement to "bargain in good faith with the Union," i.e. a promise not to go around the Union and deal directly with the employees. Cal. Civ. Code § 1638 (plain language).

Finally, the Court's interpretation of the Settlement Agreement is buffeted by the NLRB's conduct subsequent to the Settlement Agreement becoming final. On January 19, 2018, the NLRB Compliance Department sent Gibson Wine a letter describing "what the Employer needs to do to comply with the [Settlement] Agreement." Doc. No. 26 at pp. 60-63. This included "bargain[ing] in good faith with the Union" and informing the Agency of the steps the parties took to come to the table. Id. at p. 60-61. The Compliance Letter does not speak to any particular remedy the workers should receive, but simply evinces the NLRB's intent to make sure Gibson Wine dealt with the Union—and not directly with the workers. Id. Thus, Gibson Wine's contention that "this action has been rendered moot" due to the Settlement Agreement also fails. See SEIU Local 2028 v. Rady Children's Hosp., 2008 WL 5221060 at *3 (S.D. Cal. Dec. 12, 2008) ("The motion to compel has not been rendered moot by the NLRB settlement. The NLRB proceedings concerned unfair labor practice charges whereas the grievance concerns alleged violations of the CBA").

C. *The Union has not waived arbitration by pursuing the Grievances at the NLRB*

The Court has the authority to decide whether the parties agreed to arbitrate and what issues are to be arbitrated "unless the parties clearly and unmistakably provide otherwise."

---

dispute); see also G.W. Galloway Co. v. NLRB, 856 F.2d 275 (1988) ("[W]hen the Board ventures outside the strict confines of the charge, it must limit itself to matters sharing a significant factual affiliation with the activity alleged in the charge"); Nickles Bakery, 296 N.L.R.B. at 928 (setting forth a three-part test to determine whether allegations are "closely related," which requires examining (1) whether the allegations "involve the same legal theory as the [pending] allegations"; (2) whether the allegations "arise from the same factual circumstances or sequence of events"; and (3) whether a respondent "would raise similar defenses to both allegations."). Suffice to say, the facts and legal theory underpinning the Union workers' rights concerning outsourcing and seniority under the CBA are distinct from whether Gibson Wine violated Section 8(a)(5) by directly dealing with the employees.

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). This of course applies to questions of waiver. Martin v. Yasuda, 829 F.3d 1118, 1123 (9th Cir. 2016). A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. Id. (quoting Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)).

Here, Gibson Wine has failed to identify evidence in the record demonstrating how the Union has acted inconsistent with its right to arbitrate by submitting the charge to the NLRB. As thoroughly discussed in Section B above, the NLRB did not resolve Grievances 8026 and 5939D in the Settlement Agreement, nor is there any indication in the Charge or the Settlement Agreement that the Union's intent was otherwise. Further, the record is replete with unrebutted evidence demonstrating how the Union has consistently sought arbitration, including:

- The Union's attempts to assemble an arbitration panel via FCMS, both before and after the NLRB Charge was filed, in order to move forward with the arbitration process. (Doc. No. 28-4 at p. 82; Doc. No. 30-3);

- The Union's October 20 clarification letter sent to the NLRB, which, stated "to avoid any confusion, it is wise to review the factual background of this dispute"—the Grievances (Doc. No 32-1 at p. 5);

- The NLRB's acknowledgement of the Union's position: "[a]t this time, the Union is not pursuing a [charge] regarding the seniority provision, the subcontracting provision, or the severance provision." (Id. at p. 32);

Thus, Gibson Wine's argument that arbitration has been waived also fails.

*Conclusion to Section I*

Gibson Wine has failed to meet its burden to demonstrate as a matter of law how the issues raised in the Grievances are "representational issues," and has failed to identify portions of the record, in support of its mootness and waiver arguments, indicating the Union submitted the issues alleged in the Grievances to the NLRB. Therefore, Gibson Wine has failed to meet its burden, precluding summary judgment on these issues. Soremekun, 509 F.3d 978, 984 (9th Cir. 2007).

/ / /

## II. Ordering arbitration is not inconsistent with the DOJ/EPA consent decree

Finally, Gibson Wine argues that ordering arbitration would be inconsistent with the Court's previous consent decree in the DOJ/EPA action. The Union disputes this contention. Thus, as with the NLRB dispute, understanding the terms of the Consent Decree is again key.

*Analysis*

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. Lasar v. Ford Motor Co., 399 F.3d 1101, 1108 (9th Cir. 2005). To determine whether a case is moot, a court must ask whether a change in the circumstances existing at the beginning of the litigation has "forestalled any occasion for meaningful relief" that the court could grant. Id.

First, it is worth noting that the Union (and the workers they represent) was not a party to the action that resulted in the Consent Decree. See. Further, ¶ 17 of the Decree reads as follows:

> [Gibson Wine] shall assure technicians who operate and maintain the []
> Refrigeration System are qualified with refrigeration system engineering training
> to safely perform assigned tasks, including sufficient knowledge to interpret and
> apply reports generated by the Computer Control System. Prior to commencing
> Continuous Operation of the Computer Control System, [Gibson Wine] shall
> specifically authorize technicians who are qualified to operate and maintain the []
> Refrigeration System using the Computer Control System.

Doc. No 28-4 at p. 129 (Def. Ex. N, Consent Decree in 1:15-cv-01900-AWI-SKO). Gibson Wine contends this portion of the Decree *required* it lay off the four maintenance workers and outsource the work. However, as the Union points out, this paragraph says no such thing. The Union argues, for instance, that Gibson Wine could have retrained the maintenance workers in operation of this system, instead of laying them off (see Grievance 8026), or could have transferred these workers with more seniority to another department (see Grievance 5939D). This dispute is best resolved by the arbitrator. The Court need only determine whether the plain language of the Consent Decree has mooted the issue; it has not. See Doc. No. 28-4 at ¶ 75 (specifically noting the Decree does not limit the rights of non-parties). Thus, Gibson Wine has failed to demonstrate an absence of a genuine issue of material fact, precluding summary judgment. Soremekun, 509 F.3d 978, 984 (9th Cir. 2007).

**III.   No genuine issue of material fact exists concerning the Union's petition to compel**

Having resolved that Gibson Wine has not met its burden to show this Court should dismiss the motion to compel arbitration, the Court turns to substance of the Union's motion: whether a genuine issue of material fact exists concerning the parties' agreement to arbitrate. The Union contends the parties' agreement clearly mandates that disputes about the interpretation of a provision of the CBA are to be arbitrated. Gibson Wine disagrees.

*Analysis*

As was thoroughly discussed in Section I.A. above, the Court has jurisdiction to hear "suits for violations of contracts between an employer and a labor organization representing employees . . . ." 29 U.S.C. § 185. However, when an agreement to arbitrate is at play, parties should be ordered to arbitration where the claim is "readily susceptible to an interpretation" that it be arbitrated under a collective bargaining agreement. UFCW Local 770 v. Geldin Meat Co., 13 F.3d 1365, 1368 (9th Cir. 1994). In this situation, § 301 of the LMRA has "assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. at 582-83

Grievances 8026 and 5939D concern the laid-off workers' rights under the CBA. Specifically, Grievance 8026 alleged a violation of Section X, par. 34, concerning the workers' rights on outside-contracting issues, and Grievance 5939D alleged a violation of the Seniority Supplement, concerning the bumping rights of Gibson Wine's employees. Doc. No 27 at pp. 45 and 49. The Court has no doubt that these disputes fall under the parties' agreement to arbitrate "disputes about the interpretation or application of . . . and alleged violations of the [CBA]." Doc No. 27 at p. 23. However, even if the Court did entertain doubts, the Court is still to err on the side of arbitration. Warrior & Gulf Navigation Co., 363 U.S. at 582-83; Geldin Meat, 13 F.3d at 1368; see also Rady Children's Hosp., 2008 WL 5221060 at *3 (relying on Warrior & Gulf to order arbitration after the defendant's NLRB relational/mootness arguments failed). Thus, the

Union has met its initial burden to "identify the legal basis for its motion" and "the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact." Soremekun, 509 F.3d at 984.

Gibson Wine's attempts to rebut the Union's arguments are all tied to its arguments the Court has just resolved in the Union's favor in Sections I and II, above. Without being able to establish a "genuine issue as to any material facts" concerning the agreement to arbitrate, the Court must grant the Union summary judgment on its request to compel arbitration. Nissan Fire, 210 F.3d at 1103.

### IV. Gibson Wine has not acted in bad faith or in an otherwise-sanctionable manner, precluding attorney's fees

Finally, the Union argues it should be awarded attorney's fees in the matter because Gibson Wine acted "frivolously or in bad faith in refusing to proceed to arbitration." Gibson Wine denies this, asserting it has had numerous good-faith reasons why it believed arbitration was not warranted, including those based on its interpretation of the Settlement Agreement.

*Analysis*

A court may assess attorney's fees "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc., 707 F.2d 425, 428 (9th Cir. 1983) (quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258–259 (1975)). Bad faith supporting an award of attorney's fees may be found in conduct that led to the lawsuit, and may be demonstrated by showing "a defendant's obstinacy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation." Id.

Here, the Court finds no such bad faith on the part of Gibson Wine. At a minimum, Gibson Wine had the right to stand on its argument that the NLRB Settlement Agreement governed the underlying Grievances. While the Court ultimately has decided against Gibson Wine, and has endeavored to remedy the Company's confusion over the meaning of the Settlement Agreement, no bad faith is apparent from this conduct. See Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1264 (9th Cir. 1984) (finding no evidence supporting award of

attorney's fees, where plaintiff did not engage in culpable behavior but simply failed to prove his case); see also Oregon Laborers-Employers Tr. Funds v. Pac. Fence & Wire Co., 1990 WL 84571, at *1 (D. Or. June 8, 1990) (finding no bad faith where arguments about the meaning of an agreement supported competing inferences). Thus, the Union's request for attorney's fees is denied.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Gibson Wine's summary judgment motion (Doc. No. 28) is DENIED;
2. Plaintiff United Food and Commercial Workers Union 8-Golden State's motion for summary judgment on its motion to compel arbitration (Doc. No. 24) is GRANTED;
3. Plaintiff's request for attorney's fees (Doc. No. 24) is DENIED;
4. The parties are to open the arbitration proceedings within 15 days of service of this order, and are to follow through with arbitrating Grievances 8026 and 5939D as provided for in Section XXIII of the Collective Bargaining Agreement; and
5. The Clerk shall CLOSE this case in light of the ordered arbitration.

IT IS SO ORDERED.

Dated: August 13, 2018

_____
SENIOR DISTRICT JUDGE